IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:21-CR-00334 |
| v. | (Chief Judge Brann) |
| ERICK DONNELL METZGER, | |
| Defendant. | |

MEMORANDUM OPINION

AUGUST 29, 2024

## I. BACKGROUND

In 2021, Erick Donnell Metzger was indicted for a single count of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b).[1] Metzger later pled guilty, pursuant to a written plea agreement, to that offense.[2]

The plea agreement that Metzger signed noted that, at the time he signed the plea agreement, he was "satisfied with the legal services and advice provided to [him] by [his] attorney."[3] The Court then conducted a change of plea hearing at which it inquired whether Metzger was "satisfied with the legal representation [he had] received from [his attorneys] to date"; Metzger answered that he was.[4]

Also at the change of plea hearing, the Government set forth the factual basis for its charges and the facts that it would have presented at trial to support Metzger's

---

[1] Doc. 11.
[2] Docs. 68, 72.
[3] Doc. 68 at 20.
[4] Doc. 101 at 5.

conviction.[5] The Government described that, over the course of three days, Metzger exchanged a series of text messages inquiring about the availability of a thirteen-year-old girl for sexual acts; unknown to Metzger, he was communicating with an employee of the Federal Bureau of Investigation ("FBI").[6]

The FBI employee initially placed an online advertisement that included descriptions of various sexual activities that were available.[7] Through a number of text messages, the FBI employee eventually informed Metzger that it was her thirteen-year-old daughter who was the individual who would perform any sex acts.[8] Metzger inquired whether the mother was available, but was told only the daughter performed sex acts.[9] Metzger acknowledged in more than one subsequent text message that he understood the girl with whom he would perform sex acts was thirteen years old.[10] Metzger eventually requested—and tried to negotiate—the prices for sex acts, despite his concern that he was communicating with a police officer.[11]

Metzger eventually arranged to have half an hour of sexual intercourse with the young girl in exchange for $100 and then withdrew $160 from an ATM at his

---

5   *Id.* at 20-27.
6   *Id.* at 20-21.
7   *Id.* at 21.
8   *Id.*
9   *Id.* at 21-22.
10  *Id.* at 22-23.
11  *Id.* at 23-24.

bank.[12] While the FBI employee purported to arrange a hotel room for the encounter, she asked Metzger to travel to a Sheetz gas station and buy a bottle of red Gatorade for the young girl.[13] The FBI employee then provided a location at which Metzger could meet them.[14] When Metzger confirmed that he had arrived at the area, law enforcement arrested him and searched his vehicle; upon searching the vehicle law enforcement discovered two bottles of red Gatorade and two cans of beer in a Sheetz bag.[15] After being provided *Miranda*[16] warnings, Metzger admitted that he had spoken with someone regarding sex acts with a thirteen-year-old girl, had asked for pictures of the girl, and had driven to meet the girl—but denied that he was interested in having sex with the child.[17]

Metzger admitted that the facts the Government had recited were accurate.[18]

The Court accepted the guilty plea, and a Presentence Report (PSR) was prepared.[19] The PSR described the underlying crime in some detail, with its recitation of the facts being nearly identical to the factual basis provided by the

---

[12] *Id.* at 24.
[13] *Id.* at 24-25.
[14] *Id.* at 25-26.
[15] *Id.* at 26.
[16] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[17] Doc. 101 at 26-27.
[18] *Id.* at 27.
[19] Docs. 72, 80.

Government during the change of plea hearing.[20] Metzger lodged no objections to the PSR, including its discussion of the facts of the case.[21]

This Court eventually imposed a sentence of 102 months' imprisonment.[22] Metzger did not appeal his conviction or sentence but, instead, filed this timely 28 U.S.C. § 2255 motion challenging his conviction and sentence based upon allegations of ineffective assistance of counsel, and alleging that his guilty plea was secured based upon purportedly fabricated and insufficient evidence.[23] As to his claim of ineffective assistance of counsel, Metzger asserts that his attorney handled the case poorly and a thorough investigation would have revealed that there was insufficient evidence of Metzger's guilt and some evidence against him was fabricated.[24] Metzger further argues in a standalone claim that the Government fabricated evidence against him—specifically the text messages that he exchanged with the FBI employee—and that there was otherwise insufficient evidence to support the charge against him.[25]

The Government responds that Metzger's allegations are without merit.[26] It argues that Metzger's claim of ineffective assistance of counsel is undermined by the record, as he admitted both in the plea agreement and during the change of plea

---

[20] Doc. 80 at 4-7.
[21] Doc. 81.
[22] Doc. 88.
[23] Doc. 90.
[24] *Id.* at 1-2.
[25] *Id.* at 2.
[26] Doc. 102.

colloquy that he was satisfied with the legal advice provided by counsel.[27] Moreover, because Metzger admitted to the facts that supported his guilty plea—including that he sent incriminating text messages to the FBI employee—he cannot now claim that those messages were fabricated.[28]

Metzger has not filed a reply brief, and the time to so do has now lapsed. Accordingly, this matter is ripe for disposition and, for the following reasons, the Court will deny Metzger's motion.

## II. DISCUSSION

### A. Merits of Metzger's Claims

As to Metzger's claim of ineffective assistance of counsel, "[i]n *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[29] "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[30] In determining whether an attorney's performance is deficient, courts must "determine whether, in light of all the circumstances, the [attorney's] acts or

---

[27] *Id.* at 11-12.
[28] *Id.* at 12-13.
[29] *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).
[30] *Id.* (quoting *Strickland*, 466 U.S. at 687).

5

omissions were outside the wide range of professionally competent assistance."[31] As the United States Supreme Court has emphasized:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[32]

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[33] "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable."[34] "In the context of a guilty plea, the prejudice prong of the test requires a showing 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'"[35]

---

[31] *Strickland*, 466 U.S. at 690.
[32] *Id.*
[33] *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).
[34] *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks omitted).
[35] *United States v. Fazio,* 795 F.3d 421, 426 (3d Cir. 2015) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)).

Metzger's claims of ineffective assistance fail, as he can demonstrate neither deficient performance nor prejudice. First, there does not appear to be any deficient performance since Metzger's claims that counsel never questioned him about the case and was uninterested in the case are squarely undercut by Metzger's own statements that he was entirely satisfied with counsel's performance at the time of the change of plea hearing.[36]

Second, even assuming that counsel performed deficiently, there was no resulting prejudice to Metzger. Despite Metzger's protestations of "fabricated" evidence in the form of text messages,[37] during the change of plea hearing he acknowledged, under oath, that he had in fact sent the incriminating text messages in question.[38] The PSR reiterated that Metzger had sent those incriminating text messages, and he lodged no objection to those facts.[39] As the United States Court of Appeals for the Third Circuit has repeatedly noted, federal courts "'may accept any undisputed portion of the presentence report as a finding of fact.'"[40] By failing to object to those facts, Metzger again admitted that it was he who sent the incriminating text messages, again undermining any notion that those messages were fabricated.

---

[36] Doc. 101 at 5; *see* Doc. 68 at 20.
[37] Doc. 90 at 3.
[38] Doc. 101 at 20-27.
[39] Doc. 80 at 4-7; Doc. 81.
[40] *United States v. De Castro*, 49 F.4th 836, 848 (3d Cir. 2022) (quoting Fed. R. Crim. P. 32(i)(3)(A)).

Furthermore, this Court conducted a thorough plea colloquy to ensure that Metzger's plea was both knowing and voluntary.[41] Given the knowing and voluntary nature of the plea and Metzger's acceptance of the facts proffered by the Government, there simply is no way to conclude that the facts establishing his guilt for this crime are anything other than wholly accurate.

Because the record conclusively establishes that Metzger sent the text messages in question, there is no probability that, had counsel done a more thorough investigation or spoken with Metzger in greater detail, Metzger would not have pled guilty to the charge. To the contrary, given that the evidence definitively establishes Metzger's guilt, it is difficult to imagine any other actions that counsel could have taken that would have resulted in Metzger declining to plead guilty to the offense. As there is no "reasonable probability that" Metzger would have insisted on going to trial had counsel taken different actions, no prejudice resulted from counsel's purportedly deficient performance.[42]

In sum, Metzger can demonstrate neither deficient performance nor prejudice. His claims of ineffective assistance of counsel therefore fail. Additionally, given that the record firmly establishes that Metzger wrote the text messages in question, and that the facts to which he admitted are sufficient to satisfy all elements of the offense

---

[41] *See* Doc. 101.
[42] *Fazio*, 795 F.3d at 426.

to which he pled guilty, any claims related to fabricated or insufficient evidence must fail.

### B. Certificate of Appealability

Because this Court will deny Metzger's § 2255 motion, this decision will not be appealable unless this Court or a circuit justice issues a certificate of appealability.[43] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[44] To satisfy this standard Metzger must demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claim is debatable or wrong.[45] This Court finds that Metzger has not met this burden, and therefore declines to issue a certificate of appealability.

## III. CONCLUSION

For the foregoing reasons, Metzger's 28 U.S.C. § 2255 motion will be denied. The Court will also deny a certificate of appealability.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[43] 28 U.S.C. § 2253(c)(1)(B).
[44] *Id.* § 2253(c)(2).
[45] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).